IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **AMMON RA SUMRALL,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 5:26-cv-89-MTT-CHW** |
| | **:** | |
| **WARDEN CHARLES MIMS,** *et al.*, | **:** | |
| | **:** | |
| **Defendants.** | **:** | |
| | **:** | |

## ORDER AND RECOMMENDATION

In accordance with the Court's previous orders and instructions, *pro se* Plaintiff Ammon Ra Sumrall has paid the required initial partial filing fee.  His claims are now ripe for review pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e).  For the following reasons, Plaintiff's claims that Defendants Ms. Walker, Mims, Sisson, Jones, Thomas, Crawford, and the GDC violated his religious freedom rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act and his claims that Defendants Ms. Walker, Mims, Sisson, Jones, Thomas, and Crawford violated the Eighth Amendment by failing to provide Plaintiff with adequate nutrition and/or by acting with deliberate indifference to his serious medical needs shall proceed for further factual development.[1]  It is **RECOMMENDED**, however, that Plaintiff's remaining claims against the remaining Defendants be **DISMISSED without prejudice.**

---

[1] To be clear, the Court is referring to Ms. Walker, the food service director at Wilcox State Prison and not Mrs. Walker, the Chief Counselor at Macon State Prison.  *See* ECF No. 1 at 6.

**PRELIMINARY SCREENING OF PLAINTIFF'S COMPLAINT**

## I.        Standard of Review

The Prison Litigation Reform Act ("PLRA") directs courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee.  28 U.S.C. § 1915A(a).  Courts must also screen complaints filed by a plaintiff proceeding *in forma pauperis*.  28 U.S.C. § 1915(e).  Both statutes apply in this case, and the standard of review is the same.  "*Pro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed." *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted).  Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted).  On preliminary review, the Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id*. (citations omitted).  A claim can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial process.  *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id*. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty*., 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See, e.g*., *Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

## II.     Factual Allegations

Plaintiff has been incarcerated in the Georgia Department of Corrections ("GDC") system since his October 5, 1992, conviction in the DeKalb County Superior Court for

felony murder, armed robbery, aggravated assault, impersonating a public officer, and possession of a firearm. ECF No. 1 at 1. He is serving a life sentence. *Id.* Plaintiff became vegetarian in the late 1990s because "he strongly believed that it was inherently wrong for people to kill and eat animals to satisfy human appetite." *Id.* at 8. Plaintiff further believes "that God gave humans a duty to protect the plant and all animal species," and he "sincerely believes that humans violate the duty God imposed on us when we harm the planet and unnecessarily take the lives of animals and other humans." *Id.* Plaintiff later "learned that his ancient African ancestors had worshipped the Sun God Ammon Ra, who was supreme over all other deities," and this "confirmed Plaintiff's belief that humans and animals were meant to coexist." *Id.* Indeed, "Plaintiff was so impressed with the concept of what Ammon Ra represented that he adopted Ammon Ra as his name and has used it since the early 2000s[.]" *Id.*

While Plaintiff was housed in the Telfair State Prison in 2007, he learned that the GDC had established the Alternative Entrée Program ("AEP"), which was designed "to provide prisoners with vegan meals that complied with their religious dietary restrictions." ECF No. 1 at 8-9. Plaintiff signed up for the AEP "because it conformed with his sincerely held belief that God wants humans to protect animals instead of eating them." *Id.* at 9. Shortly thereafter, Plaintiff was transferred to Macon State Prison because Telfair State Prison did not offer the AEP. *Id.* Plaintiff received vegan meals while he was in Macon State Prison and after he was transferred to Autry State Prison a few years later. *Id.*

In June 2013, Plaintiff was transferred to Wilcox State Prison ("WSP"). ECF No. 1 at 9. Plaintiff contends WSP staff "often violated the AEP by serving Plaintiff non-vegan

4

food." *Id.* Plaintiff would file grievances when these violations occurred. *Id.* In 2022, Plaintiff was "switched to pre-packaged meals" that were most often served to Jewish prisoners who required kosher meals, even though Plaintiff was not Jewish. *Id.*

Between 2022 and 2024, Plaintiff was often given two pre-packaged meals for the final meal of the day. ECF No. 1 at 10. In September of 2024, however, Plaintiff contends that the GDC, WSP warden Charles Mims, and WSP food service director Ms. Walker "began serving Plaintiff less food than he previously received." *Id.* Not only was Plaintiff receiving reduced portion sizes, but he was also rarely receiving double trays. *Id.* Plaintiff also noticed that the only soap available to him was not vegan. *Id.* On October 2, 2024, Plaintiff filed grievances requesting "the food (and portion size of food) that the menu calls for" and vegan soap that he could use to wash his clothes and body. *Id.*

A few days after Plaintiff filed these grievances, an inmate food service worker told Plaintiff that he could not feed him because Plaintiff "was no longer on the vegan list." ECF No. 1 at 10-11. The inmate told Plaintiff that he did not know why Plaintiff had been removed and that he would need to contact the chaplain, Mr. Sisson, to be placed back on the list. *Id.* at 11. When Plaintiff questioned Defendant Sisson, he was told that Deputy Warden Jones and Defendant Ms. Walker "told him to take Plaintiff off the list because Plaintiff did not get a vegan tray within the last 30 days," and GDC policy provided that an inmate who missed more than 15 meals in a 30 day period could be removed from the AEP. *Id.* Plaintiff responded that he had never missed a meal, and Defendant Sisson told Plaintiff he would have to contact Defendant Jones "to get put back on the list." *Id.* Plaintiff was placed back on the list on October 24, 2024, after communicating with a

5

different deputy warden. *Id.*

On October 29, 2024, Plaintiff was seen by a physician at WSP. ECF No. 1 at 11. The doctor observed that Plaintiff was 6'1" but weighed only 133 pounds. *Id.* He thus told Plaintiff that he needed "more calories" and "would prescribe for Plaintiff to receive more food." *Id.* at 11-12. It appears Plaintiff may have received additional food for some time, but on March 5, 2025, Plaintiff "learned that the medical department decided that [his] profiles for more food [would] not be renewed." *Id.* at 12. At this time, Plaintiff weighed only 132 pounds. *Id.* He thus filed a grievance requesting that "the medical dept. and food service dept. provide [him] with an adequate amount of food to meet [his] nutritional needs." *Id.* Defendant Mims denied Plaintiff's grievance, stating that Plaintiff had missed three medical appointments and would have to attend scheduled lab and chronic care appointments to have his profile renewed. *Id.* In addition, Defendant Mims said Plaintiff "must be evaluated every 30 days for nutritional supplements/diets." *Id.*

On March 21, 2025, another physician reviewed Plaintiff's chart and concluded that "Plaintiff's weight loss problem was acute[.]" ECF No. 1 at 12. The physician "ordered for Plaintiff to receive a colonoscopy and be restarted on an increased caloric diet." *Id.* at 12-13. Another physician performed the colonoscopy and endoscopy on March 26, 2025, and "found nothing wrong with Plaintiff's colon." *Id.* at 13. He thus concluded that an insufficient amount of food/calories was the cause of Plaintiff's weight loss." *Id.*

On March 31, 2025, Plaintiff met with a physician assistant at WSP who told Plaintiff that the doctor who performed Plaintiff's colonoscopy "recommended that Plaintiff receive vegan nutritional drinks three times a day." ECF No. 1 at 13. The

physician assistant told Plaintiff that the prison would only give out nutritional drinks twice a day, and he also looked at Plaintiff's lunch tray and said, "That's barely enough to keep a cat alive." *Id.*

Around May 6, 2025, Defendant Sisson advised Plaintiff that he had been taken off the AEP because Plaintiff "cannot be on both vegan and medical." ECF No. 1 at 13-14. This instruction came from Defendant Jones, who said that Plaintiff could not receive a vegan meal until medical removed the profile requiring the prison to provide Plaintiff with extra food. *Id.* Plaintiff filed a grievance requesting, in part, that he be placed back on the AEP while also being given the extra food that he was prescribed, stating that "[t]his policy to deny me vegan meals because a doctor wants me to have more food is clearly illegal." *Id.* at 14. On May 20, 2025, Plaintiff was told he could have both the vegan diet and a snack, and he was "reinstated on the vegan diet as of 5/14/2025." *Id.* Defendant Walker also told Plaintiff that "she knew he needed more food because of his physical appearance" and told him he would receive two food trays at each meal. *Id.* at 15. Plaintiff alleges that he "received two trays for each meal for about a week, then things went back as before[.]" *Id.* Plaintiff's meal trays did not contain enough food, and he only sporadically received any extra meal trays. *Id.*

On July 7, 2025, Plaintiff filed yet another grievance to which Defendant Mims' successor, Michael Thomas, responded on September 20, 2025. *Id.* at 15-16. Defendant Thomas told Plaintiff,

> The only diet listed under your profiles is a 3x7 diet and hs snack. There is no diet that consists of you getting 2 trays listed. Ms. Walker states that if she had an extra tray to be able to give you, she would do so, but she can only fix the number of trays

7

needed. You need to get with medical to see if they can help you with a new profile that allows more calories.

*Id.* In the interim, Plaintiff also filed a grievance to receive his prescribed vegan nutritional drinks. *Id.* Defendant Thomas responded that Plaintiff would "need to come off the vegan diet to receive enough calories" because his "nutritional drink order has expired, and you cannot receive any extra food diets while on the vegan diet." *Id.* Defendant Thomas concluded, "You will need to be removed from that diet to receive the drinks and receive enough calories." *Id.* Plaintiff alleges that Defendant Thomas's response to this grievance was based on the opinion of Defendant Doug Crawford, a contract nurse at WSP. *Id.* at 6, 16-17.

In September of 2025, "several prisoners and WSP employees told Plaintiff that they saw Plaintiff's case on the news and/or online, including on Facebook." ECF No. 1 at 17. Some of these individuals "predicted that Plaintiff would be 'put on the bus' or be subjected to other forms of retaliation by the GDC" because of the "negative publicity" from Plaintiff's previous lawsuit. *Id.* Other prisoners expressed concerns for Plaintiff's safety. *Id.*

On November 6, 2025, a physician at WSP told Plaintiff he had a significant vitamin B12 deficiency that would require injections followed up by pills. ECF No. 1 at 17-18. The physician also told "Plaintiff that his diet was the cause of his vitamin B12 deficiency." *Id.* at 18.

On November 13, 2025, Plaintiff was transferred to Macon State Prison ("MSP"), which Plaintiff describes as "one of the deadliest prisons in Georgia." ECF No. 1 at 18.

Plaintiff contends he was sent to MSP in retaliation for complaining about his "medical, religious, and dietary needs." *Id*. at 19-20.  When Plaintiff attempted to grieve his transfer, he contends that MSP warden Gregory Sampson and MSP chief counselor Mrs. Walker mishandled his grievance and denied it for improper reasons. *Id.* at 20-21.  Plaintiff also appears to allege that prison officials failed to ensure that he was in a suitably safe dorm at MSP. *Id.* at 18-19.

In addition, Plaintiff only "infrequently" received vegan food trays for the first few days he was at MSP, and by November 19, 2025, he "was denied vegan trays because his name wasn't on the list."  ECF No. 1 at 19.  Plaintiff filed a grievance on November 24, 2025, and he was reinstated on a vegan diet on November 27, 2025.  ECF No. 1 at 20-21. He contends, however, that "food service staff often served Plaintiff non-vegan food that he did not eat," and on at least three occasions he was served a non-vegan tray that he could not eat. *Id.* at 21-22.

Plaintiff also alleged that he was placed on the Tier at MSP due to retaliation and racial discrimination and was not given a chance to challenge this placement.  ECF No. 1 at 22.  More specifically, he states that prison officials "stipulated that only Caucasian prisoners were eligible" for placement in the "'good' living units in population." *Id.*  When Plaintiff filed a grievance concerning this issue, Defendant Mrs. Walker told Plaintiff, "we're going to start making it rough for people like you, starting by locking that tray flap." *Id.*  Prison officials eventually responded to Plaintiff's grievance by providing him documents showing "that Plaintiff was assigned to E-1 108-6 but was involuntarily placed in segregation Tier I because he had refused housing." *Id.* at 22-23.  The documents also

9

stated "that an informal hearing was held and Plaintiff was advised of the reasons for the assignment, and that Plaintiff said 'no comment' at the hearing." *Id.* at 23.  Plaintiff denies that a hearing took place or that he refused housing.  *See id.*

Plaintiff was kept on the Tier for 75 days in violation of GDC policy.  ECF No. 1 at 23.  While Plaintiff was on the Tier, he did not have adequate water because the faucets in each of his cells "was rusted and the water was brown." *Id.* at 24.  He contends he "became so dehydrated that his skin cracked and itched a lot, and his ankles and feet turned black." *Id.*  In addition, while he was on the Tier he "was not offered an opportunity for outside recreation and was sometimes allowed to shower once every other week." *Id.*  He had no access to television or radio and was provided with "legal and reading materials only once despite numerous requests." *Id.*  He further alleges that hid cell lights "often went out for hours and sometimes days." *Id.* at 24-25.  He also contends that the Tier was extraordinarily violent and provides multiple specific examples of serious conflicts between inmates. *Id.* at 25-27.

Plaintiff thus alleges that Defendants Mims, Thomas, Sisson, Sampson, Ms. Walker, Counselor Walker, Crawford, Jones, and the GDC itself violated his constitutional and statutory rights at WSP and MSP.  *See* ECF No. 1 at 28. As a result of these alleged violations, Plaintiff seeks a jury trial, "all forms of damages," declaratory and injunctive relief, and "all other relief that [he is] entitled to receive." *Id.* at 29.

### III.    Plaintiff's Claims

#### A. First Amendment Claims Against All Defendants

Plaintiff's allegations regarding the religious aspects of his diet may give rise to claims arising under the First Amendment.  The First Amendment, as applied to the states through the Due Process Clause of the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]"  U.S. Const. amend. I.  "Although prison inmates retain protections afforded by the First Amendment's Free Exercise Clause," prison officials may limit a prisoner's exercise of sincerely held religious beliefs if such "limitations are 'reasonably related to legitimate penological interests.'"  *Johnson v. Brown*, 581 F. App'x 777, 780 (11th Cir. 2014) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

Plaintiff's claims concerning his First Amendment religious rights are sufficient to warrant further factual development.  As described above, Plaintiff has alleged facts suggesting that he was denied a diet that would allow him to comport with his religious beliefs.  *See, e.g., Swetokos v. Allen*¸ No. 09-10085-CIV-MARTINEZ, 2010 WL 2721846, at *4 (S.D. Fla. June 7, 2010) ("Courts, generally, have found that to deny inmates food that satisfies the dictates of their religion unconstitutionally burdens their right to free exercise of their faith." (collecting cases)).  While there may be "legitimate penological interests" that would justify the decision to deny Plaintiff vegan food at some time during his incarceration, at this stage of the litigation such interests are not apparent from the face of the Complaint.  *Saleem v. Evans*, 866 F.2d 1313, 1316 (11th Cir. 1989) (citing in appendix to magistrate judge's opinion for the proposition that a court should "permit dismissal of a First Amendment claim only if it involves a religious claim so facially idiosyncratic that neither a hearing nor state justification of its regulation is required")).

11

Plaintiff alleges facts sufficient to show that Defendants Ms. Walker, Mims, Sisson, Jones, Thomas, and Crawford were responsible for failing to provide him with his religious diet at WSP. *See* ECF No. 1 at 12-17.  Plaintiff's First Amendment religious freedom claims shall therefore proceed against these Defendants.

Plaintiff also alleges that he was briefly taken off the AEP at MSP and given non-vegan food items on several occasions at that facility.  ECF No. 1 at 21-22.  However, he does not plead specific facts showing that Defendants Sampson or Mrs. Walker—the only two MSP officials named as Defendants in this case—were in any way responsible for the alleged deprivation of his religious meals.  *See id.* at 19-22.  As such, he has failed to state a claim that these two Defendants violated his First Amendment religious freedom rights, and these claims should be dismissed without prejudice.  *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation).[2]

Plaintiff also appears to name the GDC as a Defendant in this case.  ECF No. 1 at 1.  The GDC itself is a state entity entitled to Eleventh Amendment immunity, and it therefore cannot be sued under § 1983.  *See Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir.

---

[2] Plaintiff does allege that he filed a grievance about being removed from the AEP on November 24, 2025, but he also alleges that this grievance was directed to the deputy warden of care and treatment, chaplain, doctor, and food service director at MSP and not to Defendants Sampson or Mrs. Walker.  ECF No. 1 at 21; *see also id.* at 20-21, 22 (stating that Defendants Sampson and Mrs. Walker received and responded to other grievances).  Plaintiff acknowledges that he was placed back on the AEP on November 27, 2025, presumably as a result of this grievance.  *Id.* at 21.  While Plaintiff further alleges that there were other occasions where he did not receive vegan food at MSP, he does not allege that Defendants Sampson or Mrs. Walker was responsible for these incidents or had any knowledge of them.  *See id.* at 21-22.

1989) ("The Eleventh Amendment bars [the plaintiff's § 1983] action against the Georgia Department of Corrections . . . .   This Eleventh Amendment bar applies regardless of whether the plaintiff seeks money damages or prospective injunctive relief.") (citation omitted); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) (states and governmental entities that are considered "arms of the State" are not considered "persons" capable of being sued under § 1983).  Any § 1983 claims Plaintiff is attempting to raise against the GDC itself are therefore subject to dismissal.

### B.  RLUIPA Claims Against All Defendants

Plaintiff's allegations could also give rise to a separate claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"), which affords greater protection to religious freedom than the First Amendment.  *See Smith v. Allen*, 502 F.3d 1255, 1266 (11th Cir. 2007) *abrogated on other grounds by Sossamon v. Texas*, 131 S. Ct. 1651, 1659 (2011) *and overruled on other grounds by Hoever v. Marks*, 993 F.3d 1353, 1363-64 (11th Cir. 2021) (en banc).  The RLUIPA "prohibits imposing a 'substantial burden' on an incarcerated person's religious exercise unless that burden furthers a compelling government interest using the least restrictive means."  *Sims v. Sec'y, Fla. Dep't of Corr.*, 75 F.4th 1224, 1228 (11th Cir. 2023) (citing 42 U.S.C. § 2000cc-1(a)).  "To establish a *prima facie* case under section 3 of RLUIPA, a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened."  *Smith v. Governor for Ala.,* 562 F. App'x 806, 813 (11th Cir. 2014) (internal quotation marks and citation omitted).  Unlike § 1983, the GDC itself can be sued under RLUIPA.  *Sossamon*, 563 U.S. at 282 (quoting 28 U.S.C. § 2000cc–5(4)(A))

(noting that RLUIPA provides for a cause of action against an instrumentality of a state); *see also Gardner v. Riska*, 444 F. App'x 353, 355 (11th Cir. 2011) (noting that claim for injunctive relief against state department of corrections was "not frivolous because RLUIPA creates an express private cause of action for injunctive and declaratory relief against the government"). Plaintiff's RLUIPA claims that his religious rights were substantially burdened when he was removed from the AEP and given non-vegan food items at both WSP and MSP may therefore proceed against the GDC.[3]

C.  Eighth Amendment Nutrition Claims Against WSP Defendants

Plaintiff also alleges that prison officials at WSP failed to provide him with adequate nutrition.[4]  Such allegations may state a claim under the Eighth Amendment to the United States Constitution. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The Constitution requires that prisoners be provided reasonably adequate food." (internal quotation marks and citations omitted)).  Plaintiff's allegations indicate that he was regularly receiving a calorically and nutritionally inadequate diet. *See, e.g., Berry v. Brady*,

---

[3] It is not clear whether Plaintiff is attempting to raise a separate claim under either § 1983 or RLUIPA for the failure to provide him with vegan soap, but even if he is, Plaintiff has failed to state an actionable claim.  As an initial matter, he does not explain how access to vegan soap is necessary to allow him to uphold "his sincerely held belief that God wants humans to protect animals instead of eating them." ECF No. 1 at 9.  He also fails to allege to whom he sent his grievance, describe any response from prison officials, or otherwise associate any named Defendant with this alleged violation of his constitutional or statutory rights. *Douglas*, 535 F.3d at 1321-22.  If Plaintiff is attempting to raise such claims in this case, they are therefore subject to dismissal.

[4] Plaintiff does not appear to bring these claims against either of the MSP Defendants.  In addition, any § 1983 claims Plaintiff intended to bring against the GDC itself are subject to dismissal, as noted above.

192 F.3d 504, 508 (5th Cir. 1999) (suggesting an inmate can state an Eighth Amendment claim if he "he lost weight or suffered other adverse physical effects or was denied a nutritionally and calorically adequate diet"); *Wilson v. Johnson*, 385 F. App'x 319, 320 (4th Cir. 2010) (reversing § 1915A dismissal of Eighth Amendment claim where prisoner alleged "the prison serves inadequate food portions and that he suffered physically by losing weight and experiencing stress as a result of being underfed on a daily basis"). He again specifically alleges that Defendants Mims, Sisson, Jones, Ms. Walker, Thomas, and Crawford were responsible for failing to provide him adequate nutrition at WSP. ECF No. 1 at 13-16. These claims shall proceed against these Defendants.

Plaintiff's allegations could also give rise to claims that these same Defendants were deliberately indifferent to Plaintiff's serious medical needs. A prison official who is deliberately indifferent to an inmate's serious medical needs violates the Eighth Amendment to the United States Constitution. *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). To state an actionable claim in this context, a plaintiff must allege facts sufficient to establish: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

The first element is objective and requires a plaintiff to set forth a "serious medical need," which is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted). A serious medical need can also arise if "a delay in treating the need worsens the condition." *Mann,*

15

588 F.3d at 1307. "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Farrow*, 320 F.3d at 1243).

Establishing the second element—deliberate indifference—requires a plaintiff to plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law[.]'" *Wade*, 106 F.4th at 1255 (first citing *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020); and then quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)). "Subjective recklessness" requires the defendant to be "actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff," although a defendant cannot be held liable for a constitutional violation if he responds reasonably to a risk of which he is aware. *Id.* at 1262.

The final element simply requires "that a defendant have a causal connection to the constitutional harm." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007). "[A]s with any tort claim, [plaintiff] must show that the injury was caused by the defendant's wrongful conduct." *Id.* at 1326. "Causation, of course, can be shown by personal participation in the constitutional violation." *Id.* at 1327.

In this case, Plaintiff alleges that multiple physicians examined him, determined his diet was inadequate, and directed prison officials to provide him with additional food. ECF No. 1 at 11-13, 17-18. For example, one doctor told Plaintiff that he would prescribe him more food, but less than six months later Plaintiff "learned that the medical department decided that [his] profiles for more food will not be renewed." *Id.* at 12. Another doctor recommended that the prison provide Plaintiff with three vegan nutritional drinks per day,

16

but Plaintiff was told he could only have two drinks a day. *Id.* at 13. In addition, at one point prison officials would only provide Plaintiff with additional food that was not vegan, which he could not eat due to his religious beliefs. *Id.* at 14. Plaintiff has sufficiently alleged that prison officials refused to meaningfully comply with his physicians' directions. Again, Plaintiff specifically alleges that Defendants Mims, Sisson, Jones, Ms. Walker, Thomas, and Crawford were responsible for failing to provide Plaintiff adequate food. *Id.* at 13-16. His Eighth Amendment medical deliberate indifference claims shall therefore proceed against these Defendants.

### D. Retaliation Claims against WSP Defendants

Plaintiff next contends that prison officials at WSP retaliated against him by transferring him to Macon State Prison, which he suggests is a less favorable facility. An adverse action imposed in retaliation for a prisoner's exercise of a constitutionally protected right is actionable. *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989). To state a retaliation claim, an inmate generally needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). Retaliatory transfers may violate an inmate's First Amendment rights. *Williams v. Brown*, 347 F. App'x 429, 435 (11th Cir. 2009).

In this case, Plaintiff contends that he was transferred to MSP on November 13, 2025, in retaliation for his complaints about his diet. ECF No. 1 at 18. To support his claim that this transfer was retaliatory, he opines that Defendant Thomas and his

subordinates at WSP "were tired of[] and upset with Plaintiff" due to his grievances "and for also making the news about how WSP officials had violated Plaintiff's constitutional and religious rights." *Id.* at 20. He also submits that Defendant Thomas and other prison officials "knew that Macon SP was a failed institution, which meant Plaintiff would suffer, be at risk of harm, face various restrictions, and be exposed to unconstitutional living conditions." *Id.* Plaintiff also mentions that other inmates overheard prison officials talking about his veganism and were concerned about retaliation against Plaintiff, and Plaintiff overheard counselors discussing him at MSP. *Id.* at 17, 18.

At the same time, however, Plaintiff alleges that he was transferred approximately two months after the other prisoners told him the internet was "going crazy . . . about [Plaintiff's] veganism." ECF No. 1 at 17-18. Plaintiff also acknowledges that he "often filed" grievances (and filed more than one lawsuit) since he was transferred to WSP in 2013. *Id.* at 3, 9. The temporal proximity between the protected conduct and the alleged retaliation should thus be given comparatively little weight. *See Smith v. Sec'y, Fla. Dep't of Corr.*, 696 F. App'x 944, 952 (11th Cir. 2017) (finding "district judge did not clearly err in determining temporary proximity was, alone, insufficient to satisfy [plaintiff's] burden of production" in retaliation claim where "the abundance of [the plaintiff's] litigation and grievances rendered it likely any transfer for any purpose would be temporally proximate to such activity"). Plaintiff acknowledges that he never asked the MSP counselors "why they had mentioned him," and thus he cannot use this fact to support a claim of retaliation. ECF No. 1 at 18. Plaintiff also acknowledges that MSP offered the AEP, while other

facilities did not, limiting the prisons to which he could have been transferred. *See id.* at 9.

In short, Plaintiff's allegations of retaliation are too vague and speculative to state a constitutional claim. *Gonzales v. Archer*, 725 F. App'x 739, 742-43 (11th Cir. 2018) (affirming dismissal of retaliation claims where inmate "did not present facts that plausibly support a causal connection between" his grievances, the defendants, and the adverse actions taken against him); *Green v. Mowery*, 212 F. App'x 918, 920 (11th Cir. 2006) (inmate's "conclusory statement of retaliation," without more, was insufficient to establish violation of First Amendment). Any retaliation claims Plaintiff attempts to raise in this action should therefore be dismissed without prejudice.

### E.  Unrelated Claims Against MSP Defendants

In addition to his claims concerning his diet at WSP and MSP, Plaintiff also pleads facts that could give rise to claims concerning his treatment at MSP: he contends prison officials at MSP placed him in a dangerous housing unit, ECF No. 1 at 18-19, 25-27; retaliated against him for filing grievances about his transfer to MSP and his placement on the Tier, *id.* at 20, 22; improperly placed him on the Tier, *id.* at 22-23; held him in "inhumane" conditions, *id.* at 22, 24-27; discriminated against him on the basis of his race, *id*. at 22; and refused to treat him for a vitamin B12 deficiency, *id.* at 28. These claims are not properly joined to his claims concerning his diet and nutrition and should be dismissed as such.

The Federal Rules of Civil Procedure permit a plaintiff to join only related claims and defendants in a single complaint. To properly join defendants under Federal Rule of

Civil Procedure 20(a)(2), the plaintiff must establish that he is asserting a right to relief against them "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and that "any question of law or fact common to all defendants will arise in the action." Once a plaintiff has established that each defendant is properly joined, only then may he join as many claims as he has against each party per Federal Rule of Civil Procedure 18(a). *See, e.g., 6A* Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1585 (3d Ed. May 2025) ("Once parties are properly joined under [Rule 20] as to a particular claim, additional claims, whether they are related or unrelated or they are by or against all or less than all of the parties may be joined under Rule 18(a).").

The Eleventh Circuit applies the "logical relationship" test to determine whether claims arise from the same transaction or occurrence for joinder purposes. *See, e.g., Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing *Republic Health Corp. v. Lifemark Hosp. Corp. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)). "Under this test, there is a logical relationship when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Republic Health Corp.*, 755 F.2d at 1455 (quotation marks and citation omitted). In exercising its discretion regarding joinder, the Court should "provide a reasoned analysis that comports with the requirements of the Rule" and "based on the specific fact pattern presented by the plaintiffs and claims before the court." *Hagan v. Rogers*, 570 F.3d 146, 157 (3d Cir. 2009).

20

Plaintiff alleges that the WSP Defendants retaliated against Plaintiff by sending him to MSP, thereby causing "all of the pain and suffering Plaintiff has experienced" at MSP since his transfer.  ECF No. 1 at 28.  This allegation is not sufficient to allow the remaining claims arising from MSP to be joined with the claims that are proceeding in this action.  *See, e.g.*, *Denham v. Aranda*, No. 09CV1505 JLS (WVG), 2012 WL 3561988, at *3 (S.D. Cal. Aug. 18, 2012) (finding that claims for retaliatory transfer were not properly joined with claims for events that occurred at prison to which plaintiff was transferred because "those events were sufficiently distinct from the retaliation that they do not make up the same 'series of transactions or occurrences' for purposes of Rule 20"); *see also Walker v. Williams*, NO. 7:17-CV-48-HL-TQL, 2018 WL 296781, at *4 (M.D. Ga. Jan. 4, 2018) (finding that the "bare suggestion of a conspiracy or retaliatory motive is not a sufficient basis for joinder").  The remaining claims arising from Plaintiff's treatment at MSP are factually and legally distinct from the claims concerning his diet and are proceeding against different Defendants.  *State Distributors, Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416–17 (10th Cir. 1984) (affirming denial of joinder where allegations against proposed defendant were "only tangentially related to the issues and series of transactions" in the pending case because "[d]ifferent elements of proof are required for the proposed cause of action, involving different questions of fact and law").  Plaintiff has therefore failed to show how his claims concerning his diet at WSP are properly joined with his remaining claims against the Defendants at MSP.[5]

---

[5] Plaintiff has alleged that his diet caused his vitamin B12 deficiency.  ECF No. 1 at 18. Even assuming, without deciding, that this claim is properly joined to the claims that are

The Court cannot dismiss the entire Complaint for improper joinder. Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action."). The two-year statute of limitations would not bar Plaintiff from refiling any of these claims if he acts promptly to do so. *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) (holding that the court should "analyze the consequences of a dismissal on a claimant's ability to meet the statute of limitations prior to choosing dismissal over severance"). Because the bulk of Plaintiff's claims concern his confinement at WSP, the claims arising from Plaintiff's treatment at MSP should be dismissed without prejudice for improper joinder.

## IV. Conclusion

Based on the foregoing, Plaintiff's claims that Defendants Ms. Walker, Mims, Sisson, Jones, Thomas, Crawford, and the GDC violated his religious freedom rights under the First Amendment and RLUIPA and his claims that Defendants Ms. Walker, Mims, Sisson, Jones, Thomas, and Crawford violated the Eighth Amendment by failing to provide Plaintiff with adequate nutrition and/or by acting with deliberate indifference to his serious medical needs shall proceed for further factual development. It is **RECOMMENDED**, however, that Plaintiff's remaining claims against the remaining Defendants be **DISMISSED without prejudice.**

---

proceeding for further factual development, it should still be dismissed. Plaintiff states he "repeatedly requested treatment" at MSP, but MSP's "medical department has done nothing to help Plaintiff." ECF No. 1 at 28. Because Plaintiff fails to plead facts sufficient to associate any specific MSP Defendant with this alleged violation of his constitutional rights, this claim is also subject to dismissal for failure to state a claim. *Douglas*, 535 F.3d at 1321-22.

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

**ORDER FOR SERVICE**

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Ms. Walker (food service director at Wilcox State Prison), Mims, Sisson, Jones, Thomas, Crawford, and the GDC, it is accordingly **ORDERED** that service be made on Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

**DUTY TO ADVISE OF ADDRESS CHANGE**

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.  Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.  This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.  If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendants from whom discovery is sought by the Plaintiff.

The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.  This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.  The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:  except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each

25

party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.  No party shall be required to respond to any such requests which exceed these limitations.

**IT IS FURTHER ORDERED** that Defendants comply with the attached "Required Disclosure of the Existence of Video or Photographic Evidence When Plaintiff Files Suit Against One or More Georgia Department of Corrections Employees Relating to Events That Occurred During Plaintiff's Incarceration within the Georgia Department of Corrections."

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 11th day of June, 2026.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge

26

**REQUIRED DISCLOSURE OF THE EXISTENCE OF VIDEO OR PHOTOGRAPHIC EVIDENCE WHEN PLAINTIFF FILES SUIT AGAINST ONE OR MORE GEORGIA DEPARTMENT OF CORRECTIONS EMPLOYEES RELATING TO EVENTS THAT OCCURRED DURING PLAINTIFF'S INCARCERATION WITHIN THE GEORGIA DEPARTMENT OF CORRECTIONS**

Counsel for the Defendants shall confer with the Defendants and with appropriate Georgia Department of Corrections ("GDC") staff, and no later than 30 days from the date of entry of this Required Disclosure file the following disclosures:

(1)    State whether, at the time of the incident alleged in the complaint, the facility had stationary or mounted cameras in the area where that incident allegedly occurred.

(2)    If so, state whether those cameras recorded the events alleged by Plaintiff, whether those recordings have been preserved, and the identity of the custodian of the recordings. If the recordings have not been preserved, explain in detail why.

(3)    State whether body-worn or handheld cameras recorded the events alleged by Plaintiff, whether those recordings have been preserved, and identify the custodian of the recordings. If the recordings have not been preserved, explain in detail why.

(4)    If Plaintiff complains of a use of force (either anticipated, spontaneous, or unanticipated) as that term is defined in the GDC Standard Operating Procedure, Use of Video Recording Equipment, Policy No. 204.11, and the GDC Standard Operating Procedure, Use of Force and Restraint for Offender Control, Policy No. 209.04, identify the custodian of any recordings of the events alleged. If there are no available recordings, explain in detail why the events were not recorded or, if recorded but no longer available, why the recordings were not preserved.

(5)    Identify all GDC employees contacted to gather the information required by this disclosure.

Counsel is directed to preserve all video recordings and any photographs that may have captured the events giving rise to the complaint. Failure to do so may result in the imposition of sanctions.

27