**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **AMMON RA SUMRALL,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Case No. 5:26-cv-89-MTT-CHW** |
| **WARDEN CHARLES MIMS, *et al.*,** | : | |
| **Defendants.** | : | |

**ORDER AND RECOMMENDATION**

Pending before the Court for preliminary screening is Plaintiff's Amended Complaint (ECF No. 39). Plaintiff subsequently filed a motion requesting that the Court "construe the pending amended complaint to state more causes of action than Plaintiff actually listed" (ECF No. 44). This motion is **GRANTED**, and the claims in that motion have been screened along with the claims in the Amended Complaint. Plaintiff has also filed a motion for the Court to appoint an expert witness (ECF No. 23) and a motion for a hearing (ECF No. 25).

For the following reasons, Plaintiff's § 1983 claims against Centurion alleging deliberate indifference to Plaintiff's serious medical needs at Wilcox State Prison ("WSP") shall proceed for further factual development, along with his state court claims against Centurion and Crawford. It is again **RECOMMENDED** that Plaintiff's retaliation claims against Counselor Walker and any wardens at WSP be **DISMISSED without prejudice,** and it is further **RECOMMENDED** that his claims arising from his confinement at Macon

State Prison ("MSP"), including his claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against the Georgia Department of Corrections ("GDC") that are already proceeding in this case be **SEVERED** so they may proceed as a separate action. Plaintiff's motion for an expert witness and for a hearing are **DENIED without prejudice** to their refiling if later desired and appropriate.

## PRELIMINARY SCREENING OF PLAINTIFF'S AMENDED COMPLAINT

### I. Standard of Review

The Prison Litigation Reform Act ("PLRA") directs courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. 28 U.S.C. § 1915A(a). Courts must also screen complaints filed by a plaintiff proceeding *in forma pauperis*. 28 U.S.C. § 1915(e). Both statutes apply in this case, and the standard of review is the same. "*Pro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed." *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted). On preliminary review, the Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (citations omitted). A claim

can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial process. *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See, e.g.*, *Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation

of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

**II. Factual Allegations**

Plaintiff's Amended Complaint is "a continuation of the facts alleged in the original complaint," which raised interrelated claims concerning Plaintiff's diet, health, and religion. ECF No. 39 at 1. In his filings, Plaintiff generally contends that his religion prohibits him from eating animal products and thus requires him to participate in the GDC's Alternative Entrée Program ("AEP"), which provides inmates with vegan meals that comply with a variety of religious needs. ECF No. 1 at 8-9. Plaintiff contends, however, that he has been taken off the AEP without adequate justification and otherwise has been denied vegan meals at WSP and MSP, where he is currently housed. *See, e.g., id.* at 9, 19. Plaintiff contends Defendants' failure to provide him with adequate food and nutritional supplements has caused him to suffer from both "acute" weight loss and a vitamin B12 deficiency. *See, e.g., id.* at 15-16; ECF No. 39 at 1-2. Because Plaintiff contends the food he has been given is not sufficient to meet his nutritional needs, he also contends Defendants have forced him to "choose between eating animal products to satisfy his nutritional needs or continue to suffer because of his religious beliefs." ECF No. 39 at 11.

Plaintiff names as Defendants in his Amended Complaint Dr. Paul Talbot, a physician at MSP; Cynthia Hunt, a physician assistant at MSP; Dr. Marlah Mardis, the GDC's statewide medical director; Chaplain Walker, the MSP chaplain; Ms. Bruce and Ms. Daniels, food service employees at MSP; and MSP Warden Peoples. ECF No. 39 at

10-11. Plaintiff also sues Centurion, the company that employs Defendants Crawford, Talbot, and Hunt. *See, e.g.*, *id.* at 8.[1]

**III. Plaintiff's Claims**

A. Claims Arising from Treatment at MSP

First, Plaintiff's claims arising from his treatment at MSP must be filed as a separate action. As Plaintiff was previously advised, the Federal Rules of Civil Procedure permit a plaintiff to join only related claims and defendants in a single complaint. To join defendants under Federal Rule of Civil Procedure 20(a)(2), the plaintiff must establish that he is asserting a right to relief against them "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and that "any question of law or fact common to all defendants will arise in the action." Once a plaintiff has established that each defendant is properly joined, only then may he join as many claims as he has against each party per Federal Rule of Civil Procedure 18(a). *See, e.g.*, 6A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1585 (3d Ed. May 2025) ("Once parties are properly joined under [Rule 20] as to a particular claim, additional claims, whether they are related or unrelated or they are by or against all or less than all of the parties may be joined under Rule 18(a).").

The Eleventh Circuit applies the "logical relationship" test to determine whether claims arise from the same transaction or occurrence for joinder purposes. *See, e.g.*, *Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing *Republic*

[1] Some claims against Defendant Crawford are already proceeding in this action. ECF No. 10 at 22.

*Health Corp. v. Lifemark Hosps. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)).[2] "Under this test, there is a logical relationship when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Republic Health Corp.*, 755 F.2d at 1455 (quotation marks and citation omitted). "The district court has broad discretion to join parties or not and that decision will not be overturned as long as it falls within the district court's range of choices." *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002). And, "[e]ven if claims are properly joined, a district court retains discretion to sever distinct and separate claims." *Sussman v. Sec'y, Fla. Dep't of Corr.*, No. 20-14152, 2022 WL 53608, at *1 (11th Cir. Jan. 6, 2022) (citing Fed. R. Civ. P. 21, 42(b)). In exercising its discretion regarding joinder, however, the Court must "provide a reasoned analysis that comports with the requirements of the Rule" and "based on the specific fact pattern presented by the plaintiffs and claims before the court." *Hagan v. Rogers*, 570 F.3d 146, 157 (3d Cir. 2009).

Plaintiff's supplemental complaint makes clear that although Plaintiff is raising claims about the deprivation of his religious rights in both prisons, the theories underlying the claims from each prison are distinct. In his claims arising from his treatment at WSP, Plaintiff suggests that prison medical staff and prison management staff, including the chaplain, refused to provide Plaintiff with an adequate diet that comported with his

---

[2] The standard for whether claims arise from the same transaction or occurrence for Rule 20 purposes is the same as that used for compulsory counterclaims under Federal Rule of Civil Procedure 13. *See Smith*, 728 F. Supp. 2d at 1319.

religious beliefs, because he could not "be on both vegan & medical" diets. ECF No. 1 at 14. In other words, Plaintiff is alleging that the WSP Defendants' decision to deny his medical diet turned on Plaintiff's decision to accept his religious diet, or vice versa. Plaintiff does not allege that this same interaction between medical staff and management staff occurred at MSP. Rather, the deprivations of vegan meals about which Plaintiff complains at MSP appear to be sporadic and not based on any sort of policy or custom. Indeed, while Plaintiff states in his original Complaint that he was deprived of vegan food at MSP, it appears from his Amended Complaint that he was given vegan trays every time he protested being given a regular tray, regardless of whether he was officially on the AEP list. *See, e.g.,* ECF No. 39 at 5 ("Even though Plaintiff was taken off of the vegan list, prisoner kitchen workers still gave him vegan meals."). The fact-intensive nature of these inquiries thus weighs in favor of severing the MSP claims from the WSP claims.

As a practical matter, it also makes sense to separate Plaintiff's claims. At least one dispositive motion against a WSP Defendant is already pending in this case. *See generally* ECF No. 31. Plaintiff's various amendments and other filings seeking to explain or expand his MSP claims have made it difficult to decipher the scope of Plaintiff's claims and to determine to which Defendants each claim should be attributed. This is just one of the reasons why piecemeal amendments, such as Plaintiff is attempting here, are considered an "inappropriate way to amend a complaint." *Larney v. Croft*, No. 7:06-cv-40 (HL), 2006 WL 3833887, at *5 n.7 (M.D. Ga. Dec. 29, 2006). Such amendments tend to delay the resolution of Plaintiff's claims.

In sum, this case involves the complex and fact-specific interaction between Plaintiff's medical needs and his religious needs in two separate prisons involving a dozen different Defendants and different factual scenarios. Keeping the claims arising from Plaintiff's treatment at WSP and his treatment at MSP separate will assist the parties and promote judicial efficiency. The Court should therefore exercise its discretion to sever all claims concerning Plaintiff's treatment at MSP from his treatment at WSP. This includes Plaintiff's RLUIPA claims against the GDC arising from his treatment at MSP, which are currently proceeding in this action. If the Court adopts this Recommendation, then the Clerk is **DIRECTED** to file Plaintiff's Amended Complaint as a separate action. Plaintiff will then be ordered to recast his complaint on one of the Court's standard forms so that it contains each of the related and properly joined claims he wishes to bring concerning his treatment at MSP.

B. Remaining Claims

Even if the Court severs Plaintiff's MSP claims from this action, Plaintiff still raises claims in his Amended Complaint and his pending motion concerning his treatment at WSP. Plaintiff contends that (1) Defendant Centurion was deliberately indifferent to Plaintiff's serious medical needs at WSP, ECF No. 39 at 8; (2) Defendant Centurion committed medical malpractice under Georgia law related to Plaintiff's treatment at WSP, *id.* at 9; (3) Defendant Centurion is liable for the actions of Defendant Crawford under O.C.G.A. § 51-2-2, which provides for employer liability, *id.*; (4) Defendant Crawford violated the Georgia Religious Freedom Restoration Act ("GRFRA"), O.C.G.A. §§ 50-15A-1 to 50-15A-4, by requiring him to choose between the religious diet and the regular

diet, ECF No. 44 at 2; and (5) Defendant Crawford committed some unspecified "intentional tort" against Plaintiff under Georgia law, ECF No. 44 at 2-3.[3]

Plaintiff's § 1983 claims against Centurion concerning its deliberate indifference to Plaintiff's serious medical needs at WSP shall proceed for further factual development. A private contractor who operates a prison service, such as Centurion, "may be liable under § 1983 when it 'performs a function traditionally within the exclusive prerogative of the state' or county, such as providing medical services to pretrial detainees or inmates." *Ireland v. Prummell*, 53 F.4th 1274, 1289 (11th Cir. 2022) (quoting *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011)). Plaintiff alleges that he was prescribed three vegan nutritional drinks per day, but a Centurion employee told Plaintiff, "We only give them out twice a day." ECF No. 1 at 13.[4] Plaintiff was also told by Centurion employees that "Centurion doesn't provide Vitamin D pills and it no longer orders vitamins," even though Plaintiff had been prescribed "rx multi-vit, rx vit-d, [and] B-12 supplementation" by a doctor. ECF No. 39 at 1-2, 3. At this early stage, Plaintiff's claims that these alleged policies prevented him from getting his prescribed supplements cannot be summarily dismissed. Plaintiff's Eighth Amendment claims that Defendant Centurion was deliberately indifferent to Plaintiff's serious medical needs at WSP shall therefore proceed for further factual development.

---

[3] Some of these claims also appear to be raised against MSP Defendants. If this Recommendation is adopted, Plaintiff will be required to bring those claims in a separate action, as explained above.

[4] It does appear that one physician prescribed only two drinks per day for "at least 42 days." *See* ECF No. 39 at 1-2.

To the extent Plaintiff seeks to raise claims under Georgia law against Defendants Centurion and Crawford for medical malpractice, employer liability, the GRFRA, or some other unspecified tort, although the Court has determined that some of Plaintiff's federal law claims survive preliminary screening, it is possible that they may fail if faced with a motion to dismiss or motion for summary judgment. If the federal claims over which this Court has original jurisdiction are dismissed, the Court will likely decline to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3); *see also Smith v. Augusta-Richmond Cnty., Ga.*, CV122-149, 2026 WL 675326, at *4 (S.D. Ga. Mar. 10, 2026) (observing that "[t]he GRFRA is a new law that no state court has considered," and the exercise of supplemental jurisdiction over such novel state law claims is generally inadvisable). Therefore, as federal jurisdiction over Plaintiff's state law claims remains an unsettled issue, the Court finds it unnecessary and inappropriate to reach the merits of such claims at this early stage of the case. These claims shall therefore remain in this action against Defendants Centurion and Crawford.

Finally, Plaintiff states that the "wardens and Counselor Walker" at WSP "knew that Plaintiff was meant to be punished and mistreated" when he was transferred to MSP "because of his grievances, lawsuits, and the bad publicity he gave Wilcox SP and the GDC." ECF No. 39 at 7-8. Plaintiff bases this statement on his knowledge of an incident that occurred on September 10, 2018, when then-GDC "Assistant Commissioner and Chief-of-Staff for the GDC Commissioner" Timothy Ward "and other officials went to Autry SP to conduct an inspection." *Id.* at 7. When a prisoner gave Mr. Ward a letter complaining about the conditions of his confinement, Mr. Ward had the prisoner

"handcuffed and transferred to Macon SP and put in the Tier." *Id.* Plaintiff contends this action "let [Ward's] subordinates know that it's permissible to retaliate against prisoners, and his actions also showed subordinates that MSP and its Tier Unit should be used to retaliate." *Id.* To the extent that Plaintiff is attempting to bolster the retaliation claims he raised in his original Complaint, these allegations fail to do so. The alleged transfer of another prisoner by an individual not named in this lawsuit—which occurred years before Plaintiff's transfer from WSP to MSP—is far too attenuated to show that any wardens at WSP and Counselor Walker transferred Plaintiff in retaliation for his complaints. Plaintiff's retaliation claims are therefore still subject to dismissal.

## MOTIONS FOR EXPERT WITNESS AND A HEARING

Plaintiff also moves for appointment of an expert witness. Federal Rule of Evidence 706 "provides the court with discretionary power to appoint an expert witness either on the court's own motion or the motion of a party." *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996), *as amended* (Sept. 6, 1996). "The district court's discretion on whether or not to appoint an expert should be exercised and reflected in a reasoned ruling." *German v. Broward Cnty. Sheriff's Off.*, 315 F. App'x 773, 778 (11th Cir. 2009).

Rule 706 is intended to promote accurate factfinding. *See Ford v. Mercer Cnty. Corr. Ctr.*, 171 F. App'x 416, 420 (3d Cir. 2006). It is "not intended to ensure that indigent plaintiffs have access to expert witnesses in order to make their case." *Stones v. McDonald*, 7 F. Supp. 3d 422, 432 (D. Del. 2014), *aff'd*, 573 F. App'x 236 (3d Cir. 2014). "The most important factor in favor of appointing an expert is that the case involves a complex or esoteric subject beyond the trier-of-fact's ability to adequately understand without expert

assistance." *Id.* (citation omitted). Plaintiff contends an expert is needed to explain the problems with his diet and how they are impacting his health and potentially causing "irreversible" harm. ECF No. 23 at 7. At this early stage, the medical issues referenced by Plaintiff in his pleadings are not so complex as to require a court-appointed expert to assist in screening Plaintiff's claims or to rule on Plaintiff's motion for a preliminary injunction. Plaintiff's motion (ECF No. 23) is therefore **DENIED** at this time.

Plaintiff has also filed a motion for a hearing on his motion for a preliminary injunction. "An evidentiary hearing is not always required before the issuance of a preliminary injunction[,]" although a hearing may be "required to decide credibility issues" if "the injunction turns on the resolution of bitterly disputed facts[.]" *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1538-39 (11th Cir. 1989). This Court's local rules also provide that "[a]ll motions shall be decided by the court without a hearing unless otherwise ordered by the court on its own motion or in its discretion upon request of counsel." M.D. Ga. R. 7.5. As was previously discussed, the facts in this case have not yet been sufficiently developed to show that Plaintiff has a substantial likelihood of success on the merits that would warrant granting his request for a preliminary injunction, and no Defendant has responded to Plaintiff's motion for preliminary injunctive relief. It therefore follows that a hearing is not necessary at this early stage, and Plaintiff's motion (ECF No. 25) is **DENIED.**

## CONCLUSION

Based on the foregoing, Plaintiff's motion to liberally construe the Amended Complaint (ECF No. 44) is **GRANTED**, and Plaintiff's § 1983 claims against Centurion

concerning its deliberate indifference to Plaintiff's serious medical needs at WSP shall proceed for further factual development, along with his state law claims against Centurion and Crawford. It is again **RECOMMENDED** that Plaintiff's retaliation claims against Counselor Walker and any wardens at WSP be **DISMISSED without prejudice,** and it is further **RECOMMENDED** that Plaintiff's claims arising from his confinement at Macon State Prison, including his RLUIPA claims against the GDC that are already proceeding in this case, be **SEVERED** so they may proceed as a separate action. Plaintiff's motion for an expert witness and for a hearing (ECF Nos. 23, 25) are **DENIED** without prejudice to refiling.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendant Centurion and Crawford, it is accordingly **ORDERED** that service be

made on Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Service on Defendant Crawford may be made via CM/ECF, but service on Defendant Centurion must be made by the United States Marshal. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

**DUTY TO ADVISE OF ADDRESS CHANGE**

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

**DUTY TO PROSECUTE ACTION**

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

**FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE**

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail

if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

**DISCOVERY**

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendants from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a

protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

**IT IS FURTHER ORDERED** that Defendants comply with the attached "Required Disclosure of the Existence of Video or Photographic Evidence When Plaintiff Files Suit Against One or More Georgia Department of Corrections Employees Relating to Events That Occurred During Plaintiff's Incarceration within the Georgia Department of Corrections."

**REQUESTS FOR DISMISSAL AND/OR JUDGMENT**

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 20th day of November, 2026.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge

**REQUIRED DISCLOSURE OF THE EXISTENCE OF VIDEO OR PHOTOGRAPHIC EVIDENCE WHEN PLAINTIFF FILES SUIT AGAINST ONE OR MORE GEORGIA DEPARTMENT OF CORRECTIONS EMPLOYEES RELATING TO EVENTS THAT OCCURRED DURING PLAINTIFF'S INCARCERATION WITHIN THE GEORGIA DEPARTMENT OF CORRECTIONS**

Counsel for the Defendants shall confer with the Defendants and with appropriate Georgia Department of Corrections ("GDC") staff, and no later than 30 days from the date of entry of this Required Disclosure file the following disclosures:

(1) State whether, at the time of the incident alleged in the complaint, the facility had stationary or mounted cameras in the area where that incident allegedly occurred.

(2) If so, state whether those cameras recorded the events alleged by Plaintiff, whether those recordings have been preserved, and the identity of the custodian of the recordings. If the recordings have not been preserved, explain in detail why.

(3) State whether body-worn or handheld cameras recorded the events alleged by Plaintiff, whether those recordings have been preserved, and identify the custodian of the recordings. If the recordings have not been preserved, explain in detail why.

(4) If Plaintiff complains of a use of force (either anticipated, spontaneous, or unanticipated) as that term is defined in the GDC Standard Operating Procedure, Use of Video Recording Equipment, Policy No. 204.11, and the GDC Standard Operating Procedure, Use of Force and Restraint for Offender Control, Policy No. 209.04, identify the custodian of any recordings of the events alleged. If there are no available recordings, explain in detail why the events were not recorded or, if recorded but no longer available, why the recordings were not preserved.

(5) Identify all GDC employees contacted to gather the information required by this disclosure.

Counsel is directed to preserve all video recordings and any photographs that may have captured the events giving rise to the complaint. Failure to do so may result in the imposition of sanctions.